IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ANNY ELLEN PICKEN**,

    Plaintiff,

        v.

**MULTNOMAH COUNTY, et al.,**

    Defendants.

No. 3:11-cv-00024-MO

OPINION AND ORDER

    **MOSMAN, J.,**

    Plaintiff Anny Ellen Picken brought a civil rights violation claim under 42 U.S.C. § 1983. Ms. Picken claims that she was deprived of her property interest in Couch Street Housing ("Couch Street"), as guaranteed by the Fourteenth Amendment, when her residency was terminated without notice or due process of law. Multnomah County ("County") and Liv Elsa Jenssen (collectively "defendants") argue that Ms. Picken did not have a constitutionally protected property interest in continued housing at Couch Street. The parties filed cross-motions

1 – OPINION AND ORDER

for summary judgment. For the reasons stated below, I grant defendants' motion for summary

judgment and deny Ms. Picken's.

## FACTUAL BACKGROUND

Couch Street is a housing program for mothers on probation that is administered by the

Transition Services Unit ("TSU") of the Department of Community Justice ("DCJ"). (Compl. [2]

2). TSU provides services to offenders under DCJ supervision, such as locating housing,

obtaining healthcare, accessing state and federal benefits, accessing educational and vocational

training, and case management services. (Mem. in Supp. of Defs.' Mot. for Summ. J. [18] 4-5).

An offender is only eligible for services while on probation or under DCJ supervision. (*Id.* at 5).

Ms. Picken satisfied TSU's criteria for placement at Couch Street and underwent several

interviews with the corrections counselor and case manager Heather McIntosh. (*Id.*). During one

interview, Ms. McIntosh reviewed the Program Rules with Ms. Picken. (*Id.* at 7). One of the

Program Rules stated that any violation of the rules is grounds for immediate removal from

transitional housing. (*Id.* at 6-7). Ms. Picken signed a document titled House Rules Contract

confirming that she agreed to the Program Rules; however, she claims that she did not

understand that her residency could be terminated without due process. (Pl.'s Resp. [30] 5). In

July 2009, Ms. Picken and her minor daughter moved into Couch Street. (Compl. [2] 2).

Within the first few weeks of Ms. Picken's residency, she began having conflicts with

Ms. McIntosh and other residents. (Mem. in Supp. of Defs.' Mot. for Summ. J. [18] 8). In

September, Ms. Picken began to feel that Ms. McIntosh was overstepping her boundaries as a

housing case manager. In September 2009, she became upset and yelled at Ms. McIntosh and her

Department of Human Services caseworker Kelly Brezinski during a meeting. (*Id.* at 8-9). Ms.

Picken felt ganged up on and frustrated and said that Ms. McIntosh also raised her voice. (Picken

Decl. [25] ¶ 14). Ms. McIntosh alleges that after Ms. Picken apologized later that day she warned

plaintiff that a future outburst could result in termination. (McIntosh Decl. [20] ¶ 8). While Ms.

Picken remembers being given this warning, she does not remember when the conversation

happened. (Picken Decl. [25] ¶ 17).

In a meeting in the following month, Ms. Picken yelled at Ms. McIntosh again. (Mem. in

Supp. of Defs.' Mot. for Summ. J. [18] 9). Following the meeting, Ms. Picken left Ms. McIntosh

a voicemail telling her that she reminded her of her mother. (*Id.*). Ms. McIntosh felt threatened

by this message because Ms. Picken had physically assaulted her mother as a minor. (McIntosh

Decl. [20] ¶ 9). Ms. Picken, however, claims the message was in no way intended as a threat.

(Picken Decl. [25] ¶ 15). On October 6, 2009, Ms. McIntosh expressed her concerns about Ms.

Picken's behavior to Ms. Jenssen who decided to remove Ms. Picken from Couch Street. (Mem.

in Supp. of Defs.' Mot. for Summ. J. [18] 10). On October 12, 2009, Ms. Picken was informed

that her housing had been terminated due to her ongoing behavioral problems. (*Id.* at 11).

## STANDARD OF REVIEW

For cross-motions for summary judgment, this court "evaluate[s] each motion separately,

giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of*

*Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quoting *ACLU of Nev. v. City of*

*Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003)). Summary judgment is proper when there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of

the basis of its motion and providing evidence in support of its motion that demonstrates the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

"If the moving party meets its initial burden of showing 'the absence of a material and

triable issue of fact,' 'the burden then moves to the opposing party, who must present significant

probative evidence tending to support its claim or defense.'" *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting *Richards v. Neilson Freight Lines*, 810 F. 2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex*, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 631. If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support the claim than would otherwise be necessary. *Id.*

## DISCUSSION

The principle issue in this case is whether Ms. Picken had a property interest in her residency at Couch Street. Ms. Picken argues that the source of her property right can be found in Oregon statute, Oregon common law, and Oregon contract law.[1] Defendants, however, allege that Ms. Picken does not have a property interest and seek to establish that Ms. Jenssen is entitled to qualified immunity and that *Monell* liability cannot be established against the County.

## I.    Property Interest

To establish a § 1983 claim, Ms. Picken must show that she has been deprived of a federal right and that the person who deprived her of that right acted under color of state law.

---

[1] Ms. Picken did not plead the source of her property interest in her complaint. It was first raised in Plaintiff's Response to Defendants' Motion for Summary Judgment [30].

*Gomez v. Toledo*, 446 U.S. 635, 638 (1980). A threshold requirement in a procedural due process claim of this kind is "the plaintiff's showing of a property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). A property interest is created and defined by "existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The parties disagree on the threshold issue of whether Ms. Picken had a property right protected by the Constitution.

### A. *No Property Interest Was Created by the Residential Landlord Tenant Act*

Oregon's Residential Landlord and Tenant Act ("RLTA") "applies to, regulates and determines rights, obligations and remedies under a rental agreement, whenever made, for a dwelling unit located within the state." Or. Rev. Stat. § 90.115. The RLTA requires that a landlord give a tenant notice before terminating a rental agreement. Or. Rev. Stat. § 90.630(1). Ms. Picken claims that she was a tenant under Or. Rev. Stat. Chapter 90 and therefore had a property right under the RLTA. She claims that the Program Rules and House Rules Contract for Couch Street met the definition of a rental agreement and that Couch Street is a dwelling unit.[2] She also claims that she was a tenant[3] because she was a roomer[4] and that she paid a monthly

---

[2] A "rental agreement" is defined as "all agreements, written or oral, and valid rules and regulations…embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises." Or. Rev. Stat. § 90.100(36). A "dwelling unit" is defined as "a structure or the part of a structure that is used as a home, residence or sleeping place by one person who maintains a household or by two or more persons who maintain a common household." Or. Rev. Stat. § 90.100(11).
[3] A "tenant" "means a person, including a roomer, entitled under a rental agreement to occupy a dwelling unit to the exclusion of others, including a dwelling unit owned, operated or controlled by a public housing authority." Or. Rev. Stat. § 90.100(45)(a)(A).
[4] A "roomer" is "a person occupying a dwelling unit that does not include a toilet and either a bathtub or a shower and a refrigerator, stove and kitchen, all provided by the landlord, and where one or more of these facilities are used in common by occupants in the structure." Or. Rev. Stat. § 90.100(37).

rent.[5] Consequently, Ms. Picken contends that she was entitled to notice of termination under the RLTA.

Defendants disagree and argue that Couch Street does not fall within the purview of the RLTA. First, they argue that Ms. Picken was not a tenant because she did not occupy the house to the exclusion of others. (Defs.' Reply [33] 15). Staff members retained the right to randomly search rooms, assign roommates, and move women to different rooms. The extent of Ms. Picken's right to privacy was that house members were not allowed to enter another member's room. The phrase "to the exclusion of others," refers to a "tenant's rights in relation to *the public*, not in relation to other tenants." *Torbeck v. Chamberlain*, 910 P.2d 389, 393 (Or. Ct. App. 1996). It seems reasonable that "the public" includes staff members. Thus, Ms. Picken's inability to exclude staff members from her room runs counter to the definition of tenant in *Torbeck.*

In an analogous Sixth Circuit case, the court held that plaintiff's possession of keys to the transitional shelter did not imply a right to exclusive possession when the landlord had a right to provide keys to whomever else it chose. *Thomas v. Cohen*, 453 F.3d 657, 663 (6th Cir. 2006). That plaintiff had her own bedroom and other residents had no right to enter was not evidence of a right to exclusive possession. *Id.* Similarly, Ms. Picken raises the fact that she was provided with a set of keys to Couch Street and that other tenants were not permitted to enter her room. (Pl.'s Resp. [30] 9). Like *Thomas*, Ms. Picken has only presented evidence that she possessed her room to the exclusion of other tenants. There is no factual dispute then that Ms. Picken was not entitled to possess Couch Street or her room to the exclusion of others. Therefore, Ms. Picken does not qualify as a tenant under the RLTA as a matter of law.

---

[5] "Rent" "'means any payment to be made to the landlord under the rental agreement, periodic or otherwise, in exchange for the right of a tenant and any permitted pet to occupy a dwelling unit to the exclusion of others." Or. Rev. Stat. § 90.100(35).

Second, defendants argue that Ms. Picken's monthly "rent" was not in consideration of a right to occupy a dwelling unit. Ms. Picken had to submit one-third of her monthly income to TSU, however, the entirety of the balance was returned to her when she left Couch Street less deductions for household items used, such as detergent. (Defs.' Reply [33] 16-17). Defendants claim that the "monthly deposit" was a counseling technique designed to help residents become independent. (*Id.* at 17). Further, Ms. Picken's monthly deposit did not entitle her to occupy a dwelling unit to the exclusion of others. I agree that Ms. Picken's monthly payments do not meet the definition of rent as defined by the RLTA.

Because Ms. Picken could not exclude staff, she did not occupy Couch Street to the exclusion of others and was not a tenant under the RLTA. In addition, she did not pay rent as defined by the RLTA. Therefore, I hold that she did not have a property interest under statutory law.

###### B.  *No Property Interest Created by Common Law*

Ms. Picken argues that common law prohibits using non-judicial means to evict tenants. (Pl.'s Resp. [30] 13-14). In a case analogous to the case at bar, it was held that "regardless of whether plaintiff's claim arises under the RLTA or the common law, it is premised on the alleged existence of a landlord-tenant relationship." *Strejac v. YouthCare*, No. C09-0498RSL, 2009 WL 4066938, at *3 (W.D. Wash. Nov. 18, 2009). Although this case is not binding upon my decision, it is instructive. In *Strejac*, the plaintiff's relationship with YouthCare had indicia of a tenancy but also had many features not found in traditional landlord-tenant relationships. *Id.* For example, the plaintiff had signed a rental agreement, had a room with a lock on the door, and made periodic payments. *Id.* However, YouthCare refunded a portion of the rent to each resident, subjected residents to invasive rules, and required that they accept various social work services.

*Id.* The plaintiff was subject to a variety of other requirements and YouthCare staff could enter his room at any time. *Id.*

Here, Ms. Picken contends she had indicia of a tenancy: she had a rental agreement,[6] keys to Couch Street, and made monthly payments of rent[7]. However, like the plaintiff in *Strejac*, Ms. Picken was subjected to invasive rules and was required to participate in counseling and drug and alcohol treatments. (Defs.' Reply [33] 6). Additionally, she had to abstain from alcohol and sexual contact at Couch Street, all visitors had to be approved, there was a nightly curfew, random urinalysis, and her room was subject to random and regular searches. (*Id.*). Such terms, plus the staff's unfettered right of entry, undermines Ms. Picken's contention that she was a tenant. Therefore, I find that Ms. Picken did not have a property interest under common law.

### C. *No Property Interest Created by Contract*

A contract may be the source of a property interest. *Trivoli v. Multnomah Cnty. Rural Fire Protection Dist. No. 10*, 703 P.2d 285, 287 (Or. Ct. App. 1985). Ms. Picken argues that the contract she signed gave her a property interest in continued occupancy at Couch Street which could only be terminated with due process. (Pl.'s Resp. [30] 16). Defendants argue that there was no mutually explicit understanding between the parties that she was entitled to continued housing and that Ms. Picken understood that her housing was temporary and subject to immediate termination upon a rule violation. (Mem. in Supp. of Def.'s Mot. for Summ. J. [18] 17). In *Gray v. Pierce Cnty. Housing Auth.*, 97 P.3d 26, 31 (Wash. Ct. App. 2004), the tenants demonstrated that Pierce County Housing Authority had a general policy against evicting month-to-month tenants without cause. The tenants, however, failed to point to any explicit rules or regulations

---

[6] According to Ms. Picken, the Program Rules and House Rules Contract for Couch Street Housing meet the definition of a rental agreement because they embody the terms and conditions concerning the occupancy of Couch Street Housing. (Pl.'s Resp. to Defs.' Mot. for Summ. J. [#30] 9).
[7] But I have concluded already that her payments do not equal rent.

establishing this policy and thus failed to establish a mutually explicit understanding between the parties. *Id* at 31-32. This case is similar to *Gray* because Ms. Picken cannot point to any written rule that indicates that she was entitled to continued occupancy or due process.

The Program Rules for Couch Street Housing provide that "[b]reaking any of the following rules will result in an AUTOMATIC TERMINATION AND EVICTION from transitional housing." (Pl.'s Resp. [30] 17). Ms. Picken signed the House Rules Contract which provided that she read, understood, and agreed to the rules and the fact that any violation of the rules would be grounds for immediate removal from transitional housing. (*Id.*) Based on that provision, defendants claim that there is no basis in law for Ms. Picken to claim a contract-based property right entitling her to continued housing at Couch Street. (Defs.' Reply [33] 21). I agree with defendants that Ms. Picken did not have a property interest because the contract she signed did not provide a term of occupancy and it clearly states the summary termination rules.

## II.    <u>RLTA Exemption</u>

The lack of property interest controls the outcome here. Defendants argue there is a second, independent reason to grant summary judgment: TSU is an institution exempt from Oregon's RLTA. The exemption requires that residence at the institution be incidental to a service. Or. Rev. Stat. § 90.110(1). There are certainly powerful reasons for viewing TSU as exempt from the procedural requirements of Oregon's RLTA. For example, Ms. Picken resided at Couch Street as a result of her participation with TSU.  While residency is important, it is incidental to TSU's larger mission of providing probationers with counseling and case management. But a finding that TSU is exempt would be a pyrrhic victory for defendants. If Ms. Picken has no property interest, exemption from Oregon's RLTA is irrelevant.  But if she does,

the fact that state law does not provide her any procedural protections for that property interest (by exempting TSU under the Oregon RLTA) would simply be a failure of state law to do what the United States Constitution commands.

## III.    Ms. Jenssen is Entitled to Qualified Immunity

Ms. Jenssen raises the defense of qualified immunity with respect to the § 1983 claim. A defendant is entitled to qualified immunity for their official conduct so long as that conduct is objectively reasonable and does not violate clearly-established federal rights. *Cmty. House, Inc. v. City of Boise Idaho*, 623 F.3d 945, 964 (9th Cir. 2010). Ms. Jenssen did not violate Ms. Picken's constitutional right and even if she had, the right to a property interest is not clearly established.

Ms. Picken argues that any reasonable person in Ms. Jenssen's position would have known that her conduct violated Ms. Picken's clearly established rights. However, the qualified immunity standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 964-65. A qualified immunity analysis consists of two prongs: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, … the facts alleged show the [official's] conduct violated a constitutional right"; and (2) whether that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan,* 555 U.S. 223 (2009). Courts may exercise their sound discretion in deciding which of the two prongs to address first. *Pearson*, 555 U.S. at 236.

In considering whether a right was clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Here, a county agency was

responsible for TSU which established the House Rules, including the provision of immediate removal. Because of Ms. Picken's behavioral problems and because Ms. Jenssen had authority to immediately remove residents, it is reasonable that an official in Ms. Jenssen's position would consider her action lawful. Ms. Jenssen met her burden of proving that she is entitled to qualified immunity and I grant her motion.

## IV.    <u>Ms. Picken Cannot Establish Monell Liability</u>

A municipality cannot be held liable for acts of their employees under a theory of respondeat superior, however, it may be liable if the execution of its policy or custom inflicts injury under § 1983. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Only when the enforcement of the municipal policy or practice was the "moving force" behind the violation of the plaintiff's federally protected right may the municipality be held liable. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997). Three elements are required to establish *Monell* liability against the County: (1) a violation of Ms. Picken's constitutional right; (2) the existence of a municipal policy or custom; and (3) that the policy or custom was the moving force behind the constitutional violation. *Monell*, 436 U.S. at 690-92. I agree with Ms. Picken that a policy existed and that the policy, along with her behavior, is what permitted her residency at Couch Street to be terminated.  But because she did not have a property interest, her constitutional rights have not been violated and the County is not subject to *Monell* liability.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [17] is GRANTED and Ms. Picken's motion for summary judgment [22] is DENIED. Because defendants' motion

for summary judgment has been granted, defendants' alternative partial motion for summary

judgment on actual damages need not be addressed.

      IT IS SO ORDERED.

      DATED this __5th__ day of April, 2012.


                                    /s/ Michael W. Mosman_____
                                      MICHAEL W. MOSMAN
                                      United States District Court